

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 30, 2025

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
40 Foley Square
New York, NY 10007

      Re:    *United States v. Kingsley Uchelue Utulu*, S1 23 Cr. 364 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this memorandum in advance of the June 6, 2025 sentencing for defendant Kingsley Uchelue Utulu.

      The defendant took part in a conspiracy that targeted U.S. tax preparation businesses and stole the tax and other intimate personally identifiable information ("PII") of those business's customers. The scheme involved obtaining and stockpiling stolen PII from other sources too. With this trove of stolen data, the defendant and his conspirators filed fraudulent taxes to obtain undeserved refund payments. They also used the stolen PII to file for and obtain other forms of public benefits, such as Economic Injury Disaster Loan ("EIDL") payments.

      For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 51 to 63 months' imprisonment would be sufficient but not greater than necessary in light of the defendant's criminal conduct.[1]

**I.   Background**

      In May 2021, a Manhattan-based tax preparation business and accounting firm ("Firm-1") suffered a cyber intrusion. Firm-1 was the target of a spearphishing campaign, which allowed the hackers to obtain access to Firm-1's computer systems. The hackers were able to steal identifying and tax-related information for at least approximately 800 of Firm-1's customers. With this stolen PII in hand, the conspirators filed at least approximately 200 fraudulent tax returns with federal and state tax authorities in the names of Firm-1's customers.

---

[1] The plea agreement between the parties does not include an enhancement for an offense involving ten or more victims, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i). The Probation Department included this enhancement in its calculation in the PSR. As a result, the plea agreement between the parties calls for a Stipulated Guidelines Range of 51 to 63 months' imprisonment, while the PSR calculates a Guidelines Range of 63 to 78 months' imprisonment.

The Government worked to identify the source of the cyber intrusion, as well as the fraudulent filings. The fraudulent tax returns containing Firm-1's client information had been filed using a particular server ("Server-1"). A search of Server-1 revealed evidence of tax-preparation related software and the stolen information of Firm-1's customers. Server-1 also obtained stolen PII that had not originated with Firm-1.

Server-1 had been registered as associated with a particular email account ("Email Account-1"). A search of Email Account-1 provided additional evidence of its use for criminal activity, including the recovery of PII stolen from other victim tax preparation firms and the use of PII to file for public benefits such as the EIDL program and unemployment benefits. Evidence recovered from Email Account-1 led the Government to a second server ("Server-2").

Server-2 contained even more evidence of identity theft and fraud. Server-2 included files associated with the spearphishing attack used to compromise Firm-1. It also contained the PII of thousands of U.S. victims.

Through the evidence uncovered from the searches of these servers and email account, the Government was able to identify additional U.S. tax preparation businesses that had been victims of cyber intrusions similar to that suffered by Firm-1. The Government identified additional fraudulent tax returns filed with federal and state tax authorities as a result of these intrusions. Taking together the loss associated with the fraudulent tax returns the Government was able to identify as associated with the scheme, the identified tax returns sought refunds of at least approximately $8.4 million. Of this number, as least approximately $2.5 million was paid out.

The Government was able to identify at least two Nigeria-based individuals who were involved in the conspiracy responsible for this broad identity theft, hacking and fraud scheme. Utulu and another co-conspirator ("CC-1") were identified from numerous pieces of electronic evidence obtained in the searches of Server-1, Server-2, Email Account-1, and other electronic accounts. These pieces of evidence established that Utulu had used and had access to the conspiracy's electronic accounts as the conspiracy was under way.

Among other things, Utulu engaged in chat conversations with other conspirators discussing tax fraud and benefits fraud. For example, in one message, Utulu wrote CC-1 that Utulu wanted to "file tax return of $100k."

In July 2023, a Southern District of New York returned superseding indictment S1 23 Cr. 364 (PGG), charging Utulu in six counts: one count of participating in a hacking conspiracy, in violation of 18 U.S.C. § 371 (Count One), two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Counts Two and Four), two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Three and Five), and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Six).

In September 2023, Utulu traveled from his home in Nigeria to the United Kingdom. While present in the United Kingdom, Utulu was placed under arrest pursuant to the indictment filed in this case. In February 2024, Utulu was extradited from the United Kingdom to the United States.

## II. The Sentencing Guidelines and Section 3553(a) Factors

The Sentencing Guidelines promote the "basic aim" of "ensuring similar sentences for those who have committed similar crimes in similar ways," *United States v. Booker*, 543 U.S. 220, 252 (2005), and so "to secure nationwide consistency, the [Sentencing] Guidelines should be the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007). Along with the Guidelines, the other factors set forth in Title 18, United States Code, Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

## III. The Court Should Impose a Sentence Within the Stipulated Guidelines Range

A sentence of imprisonment within the Stipulated Guidelines Range of 51 to 63 months' imprisonment would be sufficient but not greater than necessary under the relevant Section 3553(a) factors.

A sentence within the Stipulated Guidelines Range is necessary in light of the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(1) & 3553(a)(2)(A).

The defendant took part in a broad hacking, fraud, and identity theft scheme that targeted multiple U.S. businesses and governmental bodies, trading on the PII of thousands of people. The defendant engaged in this conduct from the relative comfort and remove of his home in Africa, far away from the victims he targeted. The scheme involved cyber intrusions, the stockpiling of PII, and the use of this PII to obtain fraudulent payouts. This conduct was sophisticated, and long-running.

Identity theft itself is rampant. The Federal Trade Commission received more than 1 million complaints of identity theft each year from 2020 through 2022. See https://www.ftc.gov/system/files/ftc_gov/pdf/CSN-Data-Book-2022.pdf, at 10. Each case of identity theft causes extensive harms to its victims, who face the possibility of financial injury, damaged credit scores, and feelings of emotional insecurity. Identity theft is a terrible crime that should be met with real consequences.

In light of the seriousness of the offense and the harm it caused, a punishment that is just and commensurate with the defendant's conduct is required.

Both general and specific deterrence also support the imposition of a sentence within the Stipulated Guidelines Range. As for specific deterrence, the defendant took part in this scheme, from overseas, motivated by greed. He showed no regard for the harm impacted on his victims. A sentence within the Stipulated Guidelines Range will help to deter the defendant from committing additional criminal activity.

General deterrence is also an important sentencing consideration here. The crimes committed by the defendant are too common and often difficult to investigate and prosecute. As can be seen here, the defendant committed these crimes while overseas, and he is only facing justice in a U.S. Court because the Government was able to successfully extradite the defendant for purposes of prosecution. The sentence in this case should send a message to others engaged in identity theft, fraud, and hacking conduct—both within the United States and abroad—that this conduct carries a significant price.

As is clear from this case, it is all too easy to do what the defendant did, all too attractive, and all too difficult to detect until the fraud has reached a substantial scale. This means that a meaningful sentence is warranted. *See, e.g.*, *United States* v. *Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.' (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (alteration in original)); *United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Francesco, Galbiati & Vertova, *The Deterrent Effects of Prison: Evidence From a Natural Experiment*, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence."). The Court's sentencing determination should send a strong message to others about the serious consequences of engaging in such flagrant criminal conduct.

## IV. Financial Penalties

The Government intends to seek both restitution and forfeiture.[2]

The Government intends to seek restitution in the amount of $3,647,629.39. This reflects the losses suffered in fraudulently paid out tax refunds ($2,447,979.39), fraudulently paid out EIDL submissions ($819,400), and the costs of remediation to the victim tax preparation businesses ($380,250).

The Government intends to seek forfeiture in the amount of $290,250. This reflects the value of cryptocurrency that CC-1 transferred to Utulu's account in the course of the scheme.

## V. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 51 to 63 months' imprisonment would be sufficient but not greater than necessary to comply with the purposes of sentencing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: /s/_____
Daniel G. Nessim
Assistant United States Attorney
(212) 637-2486

---

[2] The Government is aware of the Court's Individual Rule requiring that proposed restitution and forfeiture orders be filed in advance of sentencing. The Government will file a proposed forfeiture order in advance of sentencing, but it is not yet prepared for filing. The Government is in the process of obtaining the proper mailing address for the restitution order and intends to request additional time at sentencing to finalize the restitution order.